UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

A.D.,

    Plaintiff,

vs.

MIAMI DADE COLLEGE,

    Defendant.
_____/

**COMPLAINT AND JURY DEMAND**

Plaintiff A.D. ("Plaintiff") sues Defendant, MIAMI DADE COLLEGE ("Defendant") for violation of Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 arising from Defendant's unlawful discriminatory treatment of Plaintiff and alleges the following:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff A.D. is *sui juris*, is currently enrolled as a student at Miami Dade College, and resides within the Southern District of Florida.

2. He is a qualified individual with a disability under and as defined by federal law, Title II of the ADA, and Section 504 of the Rehabilitation Act.

3. As a result of a motor vehicle accident on April 2018, Plaintiff was hospitalized for three months, suffered multiple strokes and seizures, and has been diagnosed with cognitive impairment. Also, as a result of his accident, Plaintiff's ability to walk is impaired, and he walks with the assistance of a cane

4. As a result of his disability, Plaintiff requires accommodations, such as additional time for completion of tests and assignments and testing in a semi-private environment.

5. Such accommodations are considered reasonable under the ADA.

6. Defendant Miami Dade College is a public university with campus locations throughout the state of Florida and which receives federal funds for its operations. Their main campus is located at 300 NE 2nd Ave, Miami, FL.

7. Defendant is a "public entity" within the meaning of Title II of the ADA and a recipient of federal funds for the purposes of Section 504 of the Rehabilitation Act and is subject to the provisions of the ADA and the Rehabilitation Act.

8. Plaintiff has or is not required to exhaust any administrative procedures as a condition of bringing this action.

9. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiff sues Defendant under Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131-12134 and further under the Section 504 of the Rehabilitation Act of 1973.

10. Venue is proper in this Court under 28 U.S.C. § 1391, because Defendant resides in, and all or a substantial part of the events and omissions giving rise to this action occurred at Defendant's Kendall campus, 11011 SW 104th St, Miami, FL 33176, within the Southern District of Florida.

## FACTS

11. After the accident, Plaintiff began attending classes at Miami Dade College in Summer of 2019, is currently enrolled, and studies toward a degree in Hospitality.  Plaintiff had attended classes at Miami Dade College in prior years and re-applied in the Spring of 2019, beginning to take classes again (after the accident) in the Summer of 2019.

12. As a part of his course of study, Plaintiff is required to take and pass Introduction to Computer Technology and Applications ("CGS 1060").

13. Plaintiff enrolled in CGS 1060 with Professor Chin Kuo for the summer semester beginning May 14, 2019 to fulfill this requirement.

14. Prior to Plaintiff's enrollment in CGS 1060, he was registered with the ACCESS Disability Services department ("ACCESS") at Miami Dade College and due to his disability was deemed eligible to receive double time on exams and quizzes and to use a digital recorder to record lectures.

15. To obtain this eligibility, Plaintiff provided to ACCESS medical records documenting both his neurological condition and the recommended accommodations in academic settings as set forth by the treating neuropsychologist.

16. Once his eligibility was determined by ACCESS, Plaintiff provided a faculty letter explaining his eligibility and the approved accommodations to Professor Kuo prior to the first class.

17. Plaintiff also provided Professor Kuo a referral to the Testing and Assessment Center (the "TAC") at Miami Dade College Kendall Campus, where students eligible to receive additional time on exams and quizzes, among other accommodations, take their exams.

18. While Plaintiff was enrolled in CGS 1060, he had multiple discussions with Professor Kuo about the accommodations he required for the class. On each occasion where Plaintiff requested such an accommodation, Professor Kuo denied or intentionally delayed providing these accommodations.

19. For example, on two occasions during the summer semester, Plaintiff was required to complete quizzes for Professor Kuo's class which he should have been able to take

at the TAC with double the regular amount of time allotted, while his classmates were taking the quizzes on computers in class. Both quizzes were to be taken through Blackboard, an online education program.

20. The professor controlled access to the quiz through Blackboard and needed to "open up" the quiz for a student to access it.

21. When Plaintiff asked Professor Kuo to make the first quiz available to him at the TAC so Plaintiff could take it with additional time, Professor Kuo refused and responded loudly that Plaintiff did not look like his other students who get special accommodations and that he should take the quiz in the classroom with all the other students.

22. Professor Kuo's insinuation was not just that Plaintiff was lying about his need for reasonable accommodations, but also that a person with a disability has a distinguishable look.

23. Plaintiff's fellow classmates could hear this conversation, and Plaintiff was humiliated.

24. The spectacle of Plaintiff begging his professor to allow him to take his quiz under the circumstances to which he was entitled became so uncomfortable for Plaintiff to participate in, and for his peers to watch, that other students spoke up in defense of Plaintiff.

25. It took Plaintiff three separate trips, walking from the TAC to the classroom, to finally convince Professor Kuo to grant Plaintiff access to the second quiz.

26. Once Plaintiff was situated in the testing center with access to the quiz, he was so mentally and physically exhausted from dealing with these unnecessary and discriminatory obstacles that he could no longer properly focus and failed the quiz.

27. Weeks later, when Plaintiff went to take the second quiz on Blackboard at the

TAC, he was unable to access it, as Professor Kuo had not opened it for Plaintiff.

28. The next day, Plaintiff spoke to Professor Kuo about the professor's refusal grant Plaintiff access to the quiz; Professor Kuo insisted that he had made it available. Plaintiff walked to the TAC and documented by photo the screen showing that the quiz was not opened for Plaintiff.

29. On a number of occasions, Plaintiff had to walk back and forth from Professor Kuo's classroom to the TAC and the ACCESS center to be able to take the tests and quizzes for Professor Kuo's class. He would have to stop often and rest to catch his breath.

30. Professor Kuo's discriminatory actions were not limited to refusal to allow Plaintiff to take his quizzes and tests at the TAC, accommodations that were not costly, time-consuming, or complicated.  He also insulted Plaintiff for his disability in front of Plaintiff's classmates.

31. Professor Kuo remarked that a student will say that the computer is broken, but it is in fact his brain that is broken, a remark directed at Plaintiff.

32. Plaintiff notified school officials, including the Chairman of the Science and Technology Department, Carlos Cabrera, of Professor Kuo's refusal to provide the accommodations for which Plaintiff had been approved by ACCESS.

33. In response to Plaintiff's request that the school take action, Chairman Cabrera told Plaintiff to come by his office at a specific time before the class and "pick him up" so they could walk over together to speak with the professor about the incident.

34. Even though as a result of injuries from the accident Plaintiff's walking is impaired such that he requires the assistance of a cane, and even though Plaintiff found the prospect of confronting his professor for yet another time highly stressful and humiliating, he

agreed.

35. When Plaintiff arrived at Chairman Cabrera's office at the time he was instructed, Plaintiff was told that Chairman Cabrera was unavailable.

36. After the missed meeting, neither Chairman Cabrera nor anyone in Miami Dade College's administration contacted Plaintiff to attempt to remedy the unlawful denial of Plaintiff's accommodations and Professor Kuo's insults/harassment.

37. Professor Kuo was never admonished by Miami Dade College's administration for denying Plaintiff his reasonable accommodations.

38. Chairman Cabrera and Professor Kuo had the power to take corrective actions to redress the denial of accommodations to Plaintiff.

39. When Plaintiff reached out to Chairman Cabrera following Chairman Cabrera's missed appointment with Plaintiff, he advised Plaintiff to take the class another semester with a different professor.

40. As a result of the discrimination, Plaintiff became so afraid and nervous to speak with Professor Kuo; he worried about what Professor Kuo would say to that it became impossible for Plaintiff to concentrate in the class. Plaintiff was forced to withdraw from Professor Kuo's class and will be required to repeat the class before graduating.

41. Plaintiff forfeited his tuition for the withdrawn class. Plaintiff's graduation may be delayed due to his inability to complete this mandatory class and not being able to complete other mandatory classes due to not completing Professor Kuo's required class.

42. As a result of the discrimination, Plaintiff suffered anxiety, a panic attack, humiliation, and embarrassment. Plaintiff's harm is permanent.

## COUNT I
### Violation of Title II of the Americans with Disabilities Act o f1990
**(42 U.S.C. 12101,** *et seq.***)**

43.     Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 42 as if fully set forth herein.

44.     As a student of Miami Dade College who also has a recognized disability under 42 U.S.C. § 12131, Plaintiff is to be protected against discrimination based on his disability; "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity."

45.     Title II requires that States and their actors take "reasonable measures to remove barriers to access…" for disabled individuals. *Nat'l Ass'n of the Deaf v. Florida*, 318 F. Supp. 3d 1338, 1346 (S.D. Fla. 2018).

46.     Defendant discriminated against Plaintiff by denying his requests for reasonable accommodations for test taking on multiple occasions, when such accommodations were needed due to a disability that was well-documented and known by Defendant and for which Plaintiff was already found to be eligible by ACCESS.

47.     Defendant discriminated against Plaintiff by insulting him in front of his classmates on multiple occasions due to his disability.

48.     Defendant's faculty and administration responded to the violation of ADA accommodations in a manner clearly unreasonable and can be said to have been deliberately indifferent.

49.     Defendant's policies, procedures, or practices granting professors the discretion

to deny reasonable accommodations run afoul of 28 C.F.R. §35.130(b)(7) requiring a public entity to implement reasonable accommodations when such modification would be necessary to avoid discrimination based on a disability.

50. As set forth above, Plaintiff has been discriminated against by Defendant due to his disability because Defendant intentionally failed to permit Plaintiff certain accommodations and by insulting Plaintiff for his disability in front of Plaintiff's classmates.

51. Defendant intentionally discriminated against her in violation of 42 U.S.C. §12132 and Plaintiff's damages are a proximate result of such discrimination.

52. As a result of the discrimination, Plaintiff has suffered and continues to suffer emotional damages, including pain and suffering, anguish, and humiliation, as well as a panic attack and increased anxiety.

## COUNT II
## Violation of Section 504 of the Rehabilitation Act of 1973
**(29 U.S.C. § 794)**

53. Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 42 as if fully set forth herein.

54. By failing to permit Plaintiff the benefit of reasonable accommodations which cost Defendant nothing and by insulting Plaintiff for his disability on multiple occasions in front of his classmates, Defendant intentionally discriminated against Plaintiff on the basis of his disability in violation of 29 U.S.C. § 794.

55. As a result of the discrimination, Plaintiff has suffered and continues to suffer emotional damages, including pain and suffering, anguish, and humiliation, as well as a panic attack and increased anxiety.

WHEREFORE, Plaintiff respectfully requests that this Court:

a. issues a declaratory judgment that Defendant's discriminatory practices towards Plaintiff violated Title II of the ADA and Section 504 of the Rehabilitation Act;

b. issues an injunction directing Defendant to cease its discriminatory practices against Plaintiff;

c. awards Plaintiff damages for emotional harm, pain and suffering, physical harm, and consequences.

d. awards Plaintiff his attorneys' fees and litigation expenses; and

e. grants any other relief that the Court deems just and proper.

## TRIAL BY JURY

Plaintiff demands trial by jury on all issues so triable by right.

Dated this 15th day of November 2019.

Respectfully submitted,

**WEIL SNYDER & RAVINDRAN, P.A.**
201 South Biscayne Boulevard
Citigroup Center, Suite 720
Miami, FL  33131
Telephone:     305.372.5352
Facsimile:      305.372.5355

By: /s/ *Iva U. Ravindran*

Ronald P. Weil (FBN 169966)
Email: RWeil@weillawfirm.net
Iva U. Ravindran (FBN 60447)
Email: IRavindran@weillawfirm.net
Secondary: Service@weillawfirm.net
*Counsel for Plaintiff*