UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 19-24745-CIV-CANNON/O'Sullivan

ADRIAN DOMINGUEZ,

    Plaintiff,
v.

THE DISTRICT BOARD OF TRUSTEES
OF MIAMI DADE COLLEGE,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on Defendant's Motion for Summary Judgment [ECF No. 75] (the "Motion"). The Court has considered the Motion, Plaintiff's Response in Opposition [ECF No. 78], Defendant's Reply in Support of the Motion [ECF No. 79], and the full record in this case. The Court also held a hearing on the Motion on April 16, 2021. For the reasons set forth herein, the Motion is **GRANTED**.

### FACTUAL BACKGROUND

This is a disability discrimination case between a college student and his school, Miami Dade College. The material facts viewed in the light most favorable to Plaintiff as the non-moving party are as follows below.

The Plaintiff, Adrian Dominguez, was in a car accident in 2018, which caused him to suffer traumatic brain injury and other secondary disabilities [ECF No. 73 ¶3]. Plaintiff enrolled at Miami Dade College ("MDC") for the summer semester of 2019, pursuing a degree in hospitality [ECF No. 73 ¶1; ECF No. 13 ¶11]. Because of his disability, MDC granted Plaintiff academic accommodations such as extra time to complete tests and assignments [ECF No. 73 ¶3;

ECF No. 13 ¶4]. MDC has a dedicated department called ACCESS Disability Services Department ("ACCESS") that assists disabled students to ensure they have equal access and opportunity throughout the college experience [ECF No. 73 ¶2]. On May 2, 2019, ACCESS sent a letter approving Plaintiff's accommodation request and finding him eligible for the following accommodations: "advisement," "faculty contact," "extended time" for testing, a "digital recorder," and "tutoring" [ECF 73-3 ¶3; ECF No. 41-1, p. 238; ECF No. 41-1, p. 35:2-11]. This accommodation letter allows Plaintiff to take all exams with extended time at MDC's Testing and Assessment Center ("TAC") [ECF No. 41-1, pp. 239-240; ECF No. 41-1, p. 35:13-15].

According to a student services assistant at MDC, the general procedure is that students must take the accommodation referral letter to the TAC and let TAC staff members know in advance when they are making an exam appointment [ECF No. 41-6, p. 2:5-10]. Students are instructed to make their exam appointments seven to ten days in advance and to inform their professor of the appointment [ECF No. 41-6, p. 2; ECF No. 41-3, p. 27; ECF No. 41-8, p. 2:10-17]. While it is the student's responsibility to provide notice to his/her professor prior to the appointment, ACCESS generally allows students to take their exams even if they fail to provide such notice [ECF No. 77 ¶6; ECF No. 50, p. 398-99; ECF No. 74, p. 2 n.2]. For a student to take an exam at the TAC outside of scheduled class time, the professor must specifically "open it up" for them within the student portal [ECF no. 77 ¶6; ECF No. 50, p. 649].

During the summer of 2019, Plaintiff was enrolled in Introduction to Computer Technology and Applications ("CGS 1060"), taught by Adjunct Professor Chin Yu Kuo [ECF No. 13 ¶11-12; ECF No. 73 ¶1, 5]. Plaintiff provided Professor Kuo with the ACCESS Faculty Notification Form describing his approved accommodations on the first day of class [ECF No. 74 ¶9; ECF No. 41-1,

p. 37:6-9; ECF No. 41-3, p. 18]. Plaintiff also informed Professor Kuo that he would be taking his exams at the TAC [ECF No. 41-3, p. 2].

The first exam in CGS 1060 was scheduled for the class of Tuesday, May 28, 2019 [ECF No. 41-3, p. 3]. Plaintiff approached Professor Kuo prior to class the day of the exam to let Professor Kuo know that Plaintiff would be taking the exam at the TAC pursuant to Plaintiff's accommodations [ECF No. 41- 3, p. 2; ECF No. 41-1, p. 58:13-22]. Plaintiff admits that he did not follow the proper procedure by informing his professor in advance [ECF No. 74 ¶13; ECF No. 41- 1, pp. 57:13- 16, 58:16-18]. During the conversation, Professor Kuo stated that Plaintiff "did not look disabled" [ECF No. 74 ¶11; ECF No. 41-1 p. 56:20-24]. Plaintiff was embarrassed to have this conversation in front of this classmates [ECF No 41-1, p. 57:6-9]. Professor Kuo also tried to persuade Plaintiff to take the test in the classroom [ECF No. 74 ¶12; ECF No. 41-4, p. 101:10-17]. Nevertheless, that same day, Professor Kuo set up the exam on the student portal for Plaintiff so that he could take it with extended time at the TAC [ECF No. 74 ¶13], and Plaintiff did in fact take the exam that same day (May 28, 2019) with extended time [ECF No. 74 ¶16]. Plaintiff was given a full hour to complete the exam—three times longer than the rest of the class—but spent less than twenty minutes on the exam and failed with a score of 40% [ECF No. 74 ¶16; ECF No. 41-1, p. 59:6-14; ECF No. 41-3, p. 35].

The second set of exams in CGS 1060 was scheduled for the class on Tuesday, June 11, 2019 [ECF No. 74 ¶19; ECF No. 41-3 ¶15]. This set consisted of two exams [ECF No. 74 ¶19; ECF No. 41-3 ¶15]. This time, Plaintiff properly set up an appointment for these exams in advance on June 6, 2019, to take them at the TAC on June 12, 2019 [ECF No. 74 ¶19; ECF No. 41- 6, p. 7:2- 6]. Professor Kuo sent passwords for both exams to TAC staff prior to Plaintiff's testing time [ECF No 74 ¶20; ECF No. 41-6, p. 8:6-10; ECF No. 41- 3 ¶15]. Plaintiff

3

completed one of the two exams at the TAC that day with extra time [ECF No. 74 ¶21]. He was given one hour for this exam but completed it in fifteen minutes and earned a score of 36% [ECF No. 74 ¶21]. However, Plaintiff was unable to access the other exam because the account showed that the exam was overdue as of June 11, 2019—the due date for the rest of the class [ECF No. 74 ¶21-22; ECF No. 41-1, p. 64:2-8]. A TAC staff member attempted to contact Professor Kuo to resolve the issue but was unable to reach him [ECF No. 74 ¶22; ECF No. 41- 1, p. 64:18-19]. As a result of this technical issue accessing the second exam, Plaintiff could not complete the exam that day and was told by TAC staff to discuss the issue with Professor Kuo so that he could access the exam [ECF No. 74 ¶22; ECF No. 41-1, p. 64:19-22].

The next day in class on June 13, 2019, Plaintiff asked Professor Kuo to open the exam [ECF No. 74 ¶25; ECF No. 41-3 ¶18; ECF No. 41-1, p. 146:15-17]. Professor Kuo responded as follows: "I already opened it and I am not giving you a second chance" [ECF No. 50, p. 65; ECF No. 74, ¶25]. Professor Kuo also made a comment to the class that "most of my students explain that the computer is broke but no, it's your brain is broken" [ECF No. 41-7, p. 26; ECF No. 13 ¶32; ECF No. 41-1, p. 109:5-19; ECF No. 41- 19, p. 56:23- 57:14; ECF No. 74 ¶27]. Plaintiff perceived the latter comment as directed at him [ECF No. 74 ¶29; ECF No. 41- 1, p. 109:5-10]. Plaintiff reported the issues with Professor Kuo to ACCESS that same day (June 13, 2019), noting that Professor Kuo remained "inflexible" and would not open the exam [ECF No. 74 ¶31; ECF No. 41-7, p. 24]. ACCESS staff advised Plaintiff during this conversation, which took place on Thursday, June 13, 2019, to speak with Vice Chairman Dr. Carlos Cabrera, the head of the department, and to follow up with ACCESS if necessary [ECF No. 74 ¶31; ECF No. 41-7, p. 24].

Shortly thereafter, that same week, Plaintiff met with Dr. Cabrera in person with his mother on the phone and told Dr. Cabrera about his issues accessing exams in CGS 1060 and Professor Kuo's refusal to provide access to open up his outstanding exam [ECF No. 74 ¶32; ECF No. 41- 5, pp. 2- 4; ECF No. 50, pp. 838-39]. In this meeting, Plaintiff also described Professor Kuo's comments and communicated that he felt hurt and belittled by those interactions [ECF No. 74 ¶32; ECF No. 41-1, p. 80:22-81:2; ECF No. 41-2, pp. 6-7]. Dr. Cabrera testified that he wanted to help Plaintiff and was looking into options, such as switching to a different professor [ECF No. 74 ¶33]. Plaintiff also told ACCESS staff that his meeting with Dr. Cabrera was a "good conversation" [ECF No. 41-7, p. 26]. Although Dr. Cabrera was still looking into options for Plaintiff, they arranged for a follow up meeting to take place the following Tuesday, June 18, 2019 [ECF No. 74 ¶34; ECF No. 41-1, p. 82:9-13]. The plan was for Plaintiff to meet at Dr. Cabrera's office and walk together to Plaintiff's class [ECF No. 74 ¶35; ECF No. 41- 5, p. 14:4- 23].

As planned, on June 18, 2019, Plaintiff went to Dr. Cabrera's office but was told that Dr. Cabrera was in another meeting [ECF No. 74 ¶36; ECF No. 41-1, p. 83:2-16]. Dr. Cabrera testified that his meeting with the campus president had been delayed [ECF No. 41-5, p. 17:5-10]. Plaintiff then went to class that same day, and during the class, Professor Kuo told Plaintiff that he could take the exam the next day on June 19, 2019 [ECF No. 74 ¶37; ECF No. 41-19, p. 3:4-24]. Professor Kuo also emailed ACCESS staff on June 18, 2019, at 1:41 p.m. to advise that Plaintiff would be retaking the performance exam the following day (June 19, 2019) and providing the password for Plaintiff to do so [ECF No. 41-3, pp. 37-38]. There is no dispute that Plaintiff ultimately did take the outstanding test as rescheduled on June 19, 2019, with additional time— exactly seven days after he had been unable to take the test initially due to the issue accessing the exam [ECF No. 74 ¶39; ECF No. 41-3 p. 43]. Further, in line with his earlier exams, Plaintiff was

given two hours to complete the exam but used only one hour and failed with a score of 40% [ECF No. 74 ¶39; ECF No. 41- 3, p. 43].

The record also shows that, within days of Dr. Cabrera's initial meeting with Plaintiff to discuss Plaintiff's concerns, Dr. Cabrera took various actions to address the situation. As background, on June 18, 2019, Plaintiff's mother had called MDC's Office of Equal Opportunity Programs/ADA Coordinator/Title IX Coordinator ("OEOP"), describing the situation with Professor Kuo [ECF No. 74 ¶40; ECF No. 41-2, pp. 9-10; ECF No. 41-1, p. 99:11-22]. Plaintiff's mother also had emailed Dr. Cabrera requesting that Plaintiff be moved to a different class and noting that she had also reached out to the OEOP, which is "the office where you go to officially file a grievance" [ECF No. 74 ¶42; ECF No. 41- 5, pp. 44-45; ECF No. 41-2, p. 9:5-14]. Dr. Cabrera reached out to Professor Kuo to set up a meeting to discuss Plaintiff's concerns after meeting with Plaintiff [ECF No. 74 ¶45; ECF No. 41-5, p. 7:2-6]. Dr. Cabrera held a meeting with Professor Kuo on June 19, 2019 [ECF No. 74 ¶45; ECF No. 41-5, p. 7:2-8:6; 41-3 ¶21]. At the meeting with Professor Kuo, Dr. Cabrera reviewed Plaintiff's grades, the SIMnet activity history, Professor Kuo's gradebook, and Kuo's syllabus [ECF No. 74 ¶47; ECF No. 41-5, pp. 32-39; ECF 41-3 p. 6]. Professor Kuo denied the accusations, stating that Plaintiff would be taking the exam later that same day, which Professor Kuo was able to confirm by forwarding his prior email sent to the TAC with the passwords for the exam [ECF No. 74 ¶47; ECF 41-5, p. 42-43; ECF No. 50, p. 836]. Dr. Cabrera also contacted Human Resources at MDC to check if Professor Kuo had any other similar complaints against him and found no record of such complaints [ECF No. 74 ¶49; ECF No. 41- 5, p. 104:17- 23].

On June 20, 2019—one day after Plaintiff took the outstanding exam on June 19, 2019— Dr. Cabrera reached back out to Plaintiff via email to present an acceptable solution

[ECF No. 74 ¶52; ECF No. 41-1, p. 247 ("As per our conversation, I have a solution that I consider you would find acceptable. You stated that you wish to include your mother in all conversations and in the final agreement. I am fine with that; I would, in order to comply with the Family Educational Rights and Privacy, request that you send me an email authorizing me to speak with your mother in regards to this matter.")]. Plaintiff confirmed to ACCESS staff on June 21, 2019, that Dr. Cabrera had presented him with options to resolve the issue but said that he had not yet discussed it with his mother [ECF No. 74 ¶¶53; ECF No. 41-7, p. 31]. Plaintiff and Dr. Cabrera had another phone conversation on June 25, 2019 [ECF No. 74 ¶¶54; ECF No. 41-5, p. 26:16-20]. An email from that day memorializes the phone call, stating: "As per our conversation yesterday, I will wait until you are ready" [ECF No. 74 ¶54; ECF No. 41-1, p. 247].

Plaintiff took his third set of exams on June 25, 2019, in the TAC with extended time [ECF No. 74, ¶57; ECF No. 41-3, pp. 50-52]. Professor Kuo provided access for these exams and Plaintiff was able to access them without a problem [ECF No. 74, ¶57; ECF No. 41-3, ¶¶22-23]. Plaintiff sat only a few minutes for each despite being given extra time and received a 28% for one exam and 3% for the other [ECF No. 74, ¶57; ECF No. 41-3, pp. 50-52]. Plaintiff dropped the course shortly after that [ECF No. 74, ¶58; ECF No. 41-1, p. 96:10-13; ECF No. 41-2, p. 15:11-18]. Plaintiff continued his Hospitality course for the rest of the Summer 2019 semester [ECF No. 74, ¶60; ECF No. 41-1, p. 48:13-49:8].

## PROCEDURAL HISTORY

Plaintiff's Amended Complaint asserts two claims: (Count I) Violation of Title II of the Americans with Disabilities Act of 1990 and (Count II) Violation of Section 504 of the Rehabilitation Act of 1973 [ECF No. 13]. Plaintiff seeks money damages for physical and emotional harm and pain and suffering, injunctive relief directing Defendant to cease any

discriminatory practices, and a declaratory judgment that Defendant violated the ADA and Rehabilitation Act [ECF No. 13, p. 9]. On November 12, 2020, Plaintiff moved for summary judgment on all counts [ECF No. 44]. The motion is ripe for adjudication.

## LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed R. Civ. P. 56(a). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

At summary judgment, the moving party has the burden of proving the absence of a genuine issue of material fact, and all factual inferences are drawn in favor of the non-moving party. *See Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Courts must consider the entire record—not just the evidence singled out by the parties. *See Clinkscales v. Chevron U.S.A., Inc.*, 831 F.2d 1565, 1570 (11th Cir. 1987). The non-moving party's presentation of a "mere existence of a scintilla of evidence" in support of its position is insufficient to overcome summary judgment. *Anderson*, 477 U.S. at 252.

"For factual issues to be considered genuine, they must have a real basis in the record." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted). Speculation or conjecture cannot create a genuine issue of material fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608

(11th Cir. 1991).  In assessing whether the moving party has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the non-moving party.  *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001).  Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to come forward with evidence showing a genuine issue of material fact that precludes summary judgment.  *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); Fed. R. Civ. P. 56(e).

## DISCUSSION

Plaintiff's complaint contains two counts: 1) Violation of Title II of the Americans with Disabilities Act ("ADA") and 2) Violation of Section 504 of the Rehabilitation Act of 1973 [ECF No. 13, pp. 7-9].  Under each of these two counts, Plaintiff alleges two separate theories of liability: failure to accommodate and disparate treatment.[1]

Section II of the ADA provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

Likewise, Section 504 of the Rehabilitation Act of 1973 provides:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency.

---

[1] *See Quality of Life, Corp. v. City of Margate*, 805 F. App'x 762, 767 (11th Cir. 2020) (analyzing violations of the ADA under separate theories: (1) disparate treatment, (2) disparate impact, and (3) failure to provide a reasonable accommodation).

29 U.S.C. § 794. Discrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases. *See Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1133 (11th Cir. 2019); *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000).

### A. Reasonable Accommodation

To state a *prima facie* claim for failure to accommodate under both statutes, Plaintiff "must show that: (1) he is disabled; (2) he is a qualified individual; and (3) he was discriminated against by way of the defendant's failure to provide a reasonable accommodation." *McKane v. UBS Fin. Servs., Inc.*, 363 F. App'x 679, 681 (11th Cir. 2010) (citing *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001)).

Here, there is no dispute that Plaintiff is disabled [ECF No. 75, p. 2]. Nor is there a dispute that Plaintiff is a qualified individual [ECF No. 75, p. 2]. Thus, the Motion centers on the third element—whether Plaintiff was subjected to unlawful discrimination "by reason of his disability." 42 U.S.C. § 12132.

Defendant argues that there is no triable issue on that question because Plaintiff received—in each instance of test taking—the extra time he requested within no more than seven days of Plaintiff's request for the accommodation. Plaintiff does not dispute the factual point that he received the extra time he requested on each test as alleged in the complaint, and that he did so within at most seven days in one instance. Nevertheless, Plaintiff argues that summary judgment is unwarranted because there is a purported fact issue as to the school's justification for the one-week delay as to the Word 2016 performance exam [ECF No. 78, p. 8]. That fact issue, in Plaintiff's view, creates a genuine issue of material fact because there is evidence in the record about Professor Kuo's disparaging remarks from which a reasonable juror could conclude that the

one-week delay in obtaining the accommodation was not reasonable within the meaning of the ADA [ECF No. 78, pp. 8-9; *see* ECF No. 77 ¶¶16, 21, 39, 57].

The Court disagrees. Accepting all of Plaintiff's allegations as true, summary judgment on the failure-to-accommodate claims is warranted.

First, as the undisputed record reflects, Plaintiff received his accommodation (extended time for testing at the TAC) on each and every one of the tests at issue in the complaint. For example, Plaintiff took the first exam with extended time at the TAC on May 28, 2019—the same day the rest of the class took the exam [ECF No. 74 ¶16]. Plaintiff also took the second set of exams at the TAC on June 12, 2019, and June 19, 2019 (delayed one week from the original test date) and received extended time to complete them [ECF No. 74, ¶¶21, 39]. Plaintiff took the third set of exams at the TAC on June 25, 2019, without any issue accessing the tests, and received extended time to complete the exams [ECF No 74 ¶57]. For each exam at issue, Plaintiff received three times as much time to complete the exams but still completed the exam well below even the standard time allotment [ECF No. 74 ¶¶16, 21, 39, 57]. None of this evidence is disputed [ECF No. 77 ¶¶16, 21, 39, 57]. Nor is there any evidence that, when Plaintiff and/or his mother did raise concerns to Dr. Cabrera or the ACCESS department, that anyone in school leadership ever denied or otherwise obstructed his request for extra time [ECF No. 74 ¶60; ECF no. 41-1, pp. 34:2-24, 50:9-19, 99:2-9]. To the contrary, within days, Dr. Cabrera took various steps to respond to Plaintiff's concerns, including by speaking to Professor Kuo—the end result being that Plaintiff took Professor Kuo's test at the TAC, with extra time, just seven days after the day he attempted to take the test the first time (June 12, 2019 – June 19, 2019).

Second, Plaintiff points to no authority finding liability under the ADA or Section 504 of the Rehabilitation Act on a failure-to-accommodate claim in the context of a delay as minimal as

11

one week. Nor has the Court found any such authority. All of the cases in the context of a delay in providing reasonable accommodation involve periods materially longer than the one-week period involved here. *See e.g. Hartsfield v. Miami-Dade Cty.*, 90 F. Supp. 2d 1363, 1373 (S.D. Fla. 2000), *aff'd*, 248 F.3d 1179 (11th Cir. 2001) (finding no failure to accommodate despite 10 month delay in accommodation); *Terrell v. USAir*, 132 F.3d 621, 628 (11th Cir. 1998) (affirming district court's denial of a failure to accommodate claim even though the accommodation was delayed by three months); *Frazier v. Sec'y, Dep't of Health & Hum. Servs.*, 710 F. App'x 864, 869 (11th Cir. 2017) (finding no failure to accommodate despite initial denial where supervisor ultimately granted that exact accommodation after short delay); *Luke v. Bd. of Trustees Fla. A&M Univ.*, 674 F. App'x 847, 849 (11th Cir. 2016) (affirming no liability for failure to accommodate where university provided campus police officer special equipment for disability after some delay, since the delay was not unreasonable).

The only instance in which the Eleventh Circuit appears to have reversed a grant of summary judgment on a failure to accommodate claim in the context of an accommodation delay is *Hill v. Clayton Cty. Sch. Dist.*, 619 F. App'x 916, 922 (11th Cir. 2015). But the plaintiff in *Hill* (a bus driver for the defendant school district) was put on leave without an accommodation for two months and was not permitted to work during that time. *Id.* No similar circumstance exists here, and no question of fact exists on that point. Indeed, Plaintiff remained enrolled at the school, took classes, was given his accommodations within at most a week on one test, and, although he withdrew from the class within the add/drop deadline, there is no indication that he ever was actually denied an accommodation.

Third, as referenced above, the undisputed record shows that, after Plaintiff reached out to Dr. Cabrera to express his concerns with Dr. Kuo, Dr. Cabrera promptly communicated with

Plaintiff and took various actions to address the situation. He met with Professor Kuo personally on June 19, 2019, and received confirmation from Professor Kuo that Plaintiff was scheduled to take the test that same day [ECF No. 41-5, pp. 7:4-18, 13:1-14:3; ECF No. 41-3 ¶21]. He had multiple conversations with Plaintiff to discuss the issue and exchanged email communications indicating that he was actively working to find a workable solution [ECF No. 74 ¶¶52-54; ECF No. 41-1, p. 247]. Indeed, on the heels of Dr. Cabrera's timely involvement, Plaintiff took the test on June 19, 2019, with extra time at the TAC center, only seven days after the initial issue accessing the test.

On this record, no reasonable juror could conclude that the College failed to accommodate Plaintiff's reasonable accommodation. Summary judgment is warranted as to Plaintiff's ADA and RA accommodation claims. *See Batson v. Salvation Army*, 897 F.3d 1320, 1326–27 (11th Cir. 2018) ("[W]ithout evidence of a specific instance in which [plaintiff] needed an accommodation and was denied one, [plaintiff] cannot establish a failure to accommodate."); *see also Goldberg v. Fla. Int'l Univ.*, 838 F. App'x 487, 493 (11th Cir. 2020) (affirming grant of summary judgment in favor of university where undisputed evidence showed that plaintiff received the full extra time accommodation on his medical school examinations and still failed).

### B.   Disparate Treatment

The same facts regarding the alleged conduct at issue and Defendant's response inform the Court's analysis of Plaintiff's second theory of discrimination: disparate treatment.

"To state a claim under either Title II or § 504, a plaintiff must establish: (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by

reason of the plaintiff's disability." *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019).[2] Moreover, to obtain monetary damages, as Plaintiff does here [ECF No. 13 ¶58], a "plaintiff must clear an additional hurdle: he must prove that the entity that he has sued engaged in intentional discrimination, which requires a showing of 'deliberate indifference.'" *Id.* (quoting *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 348 (11th Cir. 2012)). Deliberate indifference is an "exacting standard." *J.S., III by & through J.S. Jr. v. Houston Cty. Bd. of Educ.*, 877 F.3d 979, 987 (11th Cir. 2017). It requires proof that "the defendant knew that harm to a federally protected right was substantially likely and . . . failed to act on that likelihood." *Liese*, 701 F.3d at 344. Moreover, in order to hold a government entity liable, the plaintiff must demonstrate that an "official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [entity's] behalf" had "actual knowledge of discrimination in the [entity's] programs and fail[ed] adequately to respond." *Id.* at 349 (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)). To qualify, that "official" must be "high enough up the chain-of-command that his [or her] acts constitute an official decision by the [entity] not to remedy the misconduct." *Id.* at 350 (citing *Doe v. Sch. Bd. Of Broward Cnty., Fla.*, 604 F.3d 1248, 1255 (11th Cir. 2010)).

Because of the "official" requirement, the deliberate indifference analysis centers on Dr. Cabrera's actions, rather than Professor Kuo's. *See Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1135 (11th Cir. 2019) (finding bus drivers were not high enough on the chain of command to constitute "officials" under the *Liese* inquiry). The parties agree that Dr. Cabrera had the

---

[2] "If direct evidence [of disparate treatment] is put forward, the inquiry is straightforward; if circumstantial evidence is presented, however, we analyze the evidence through the burden-shifting framework provided in *McDonnell Douglas Corp. v. Green*, which requires a plaintiff to first make a *prima facie* case of discrimination." *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

authority to remedy the situation. Thus, the question is whether Dr. Cabrera's actions in response to Plaintiff's complaints amounted to a "deliberate choice" not to adequately respond to the alleged discrimination. *Liese*, 701 F.3d at 344 ("[D]eliberate indifference requires that the indifference be a 'deliberate choice'. . . .").

Here, the undisputed facts fall far short of deliberate indifference, which requires a showing of more than gross negligence. *Id.* Plaintiff argues that Defendant's failure to conduct a formal investigation demonstrates deliberate indifference [ECF No. 78, pp. 12-15]. Defendant replies that a formal investigation was not conducted since Plaintiff did not initiate that process through a written complaint [ECF No. 75, pp. 17-21; ECF No. 41-1, p. 264]. Defendant points to an email from Dr. Cabrera to Plaintiff stating "As per our conversation yesterday, I will wait until you are ready" [ECF No. 41-1, p. 247]. In any event, the record shows Dr. Cabrera took extensive informal steps to gather facts about the complaint and respond appropriately. Those steps included meeting with Professor Kuo twice [ECF No. 74 ¶45; ECF No. 41-5, p. 7:2-8:6], reviewing course information and relevant emails [ECF No. 74 ¶47; ECF No. 41-5, pp. 32-39; ECF 41-3 p. 6], checking for past complaints against Professor Kuo [ECF No. 74 ¶49; ECF No. 41- 5, p. 104:17- 23], and finding an academic solution for Plaintiff to take the course with another professor [ECF No. 41-1, p. 247]. More fundamentally, as already stated, Plaintiff never was denied an accommodation or denied any benefits from Defendant. 42 U.S.C. § 12132 (providing that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity"). Because no reasonable juror could conclude that Dr. Cabrera acted with deliberate indifference to Plaintiff's complaint,

Plaintiff is precluded from recovering compensatory damages under the Rehabilitation Act and ADA.

Nor has Plaintiff presented a triable issue with respect to his claim for injunctive relief. In addition to damages, Plaintiff's Amended Complaint seeks an injunction "directing Defendant to cease its discriminatory practices against Plaintiff" [ECF No. 13, p. 9]. To have standing to sue for injunctive relief, a plaintiff must show the threatened harm is real and immediate, not conjectural or hypothetical. *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001) ("In addition, '[b]ecause injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges . . . a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury.'") (alterations in original) (quoting *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001)). All of Plaintiff's allegations of discrimination arise from the treatment of one professor, Professor Kuo [ECF No. 74 ¶60; ECF No. 41-1, pp. 34:2-24, 50:9-19, 99:2-9], but Plaintiff since has dropped Professor Kuo's class [ECF No. 41-2, p. 15:17-18]. Plaintiff argues that injunctive relief is warranted to prevent any potential discrimination from future professors. But the record shows that Plaintiff continued taking a different course without any issue [ECF No. 74, ¶60; ECF No. 41-1, p. 48:13-49:8]. Because there is no evidence indicating that Plaintiff likely will experience discrimination from future professors, there is no real or immediate threat of future injury as a matter of law. *See McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1146 (11th Cir. 2014) ("[T]here is little or no chance that either hospital will refuse to provide [the plaintiff] with an interpreter if he is readmitted. Therefore, there is no real and immediate threat of future injury, and the district court properly concluded that [the plaintiff] lacked standing to seek injunctive relief."). Thus, Plaintiff lacks standing to seek injunctive relief against Defendant.

Since Plaintiff cannot recover damages and is not entitled to an injunction, the only remaining relief Plaintiff seeks is a declaratory judgment that Defendant's practices violated the ADA and Rehabilitation Act [ECF No. 13, p. 9]. The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Declaratory relief is appropriate only where there is a threat of imminent future harm. *Elend v. Basham*, 471 F.3d 1199, 1207 (11th Cir. 2006). "Thus, in order for this Court to have jurisdiction to issue a declaratory judgment, . . . [the plaintiffs] must assert a reasonable expectation that the injury they have suffered will continue or will be repeated in the future." *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1211 (11th Cir. 2019) (quoting *Malowney v. Federal Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999). Because here, as previously stated, there is no real or immediate threat of future injury, Plaintiff lacks standing to bring an action for declaratory relief.

In sum, because the undisputed record demonstrates that Defendant was not deliberately indifferent, and because there is no immediate threat of future injury, Defendant is entitled to summary judgment as to Plaintiff's ADA and RA disparate treatment claims.

## CONCLUSION

Defendant's Motion for Summary Judgment [ECF No. 75] is **GRANTED**. Judgment in favor of Defendants will be entered by separate order. Any pending motions are **DENIED** as moot. All pending deadlines and hearings are **CANCELLED**.

**DONE AND ORDERED** in Fort Pierce, Florida this 18th day of May 2021.

_____
**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record